## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAIRO ISRAEL AGUINADA AVELAR          :
                                      :
                    Petitioner,       :    3:26-cv-509
                                      :    (JUDGE MARIANI)
        v.                            :
                                      :
KRISTI NOEM, Secretary U.S.           :
Department of Homeland Security,      :               FILED
JESSICA SAGE,                         :            SCRANTON
Warden, Federal Correctional          :
Institution, Lewisburg, et al.,       :            MAR 20 2026
                                      :
                                      :    PER_____
                    Respondents.      :            DEPUTY CLERK

## MEMORANDUM OPINION

### I.    FACTUAL BACKGROUND

On February 28, 2026, Petitioner Jairo Israel Aguinada Avelar ("Petitioner" or

"Avelar"), a noncitizen from El Salvador previously alleged by the Government to be a

member of a terrorist organization—MS-13— filed a petition for writ habeas corpus pursuant

to 28 U.S.C. § 2241 (the "Petition"). (Doc. 1). According to Respondents, "Avelar is

properly detained under 8 U.S.C. § 1225(b) and is not eligible for release under 8 U.S.C. §

1226(a)." (Doc. 6 at 2). Respondents make no argument, as they did before the

Immigration Judge ("IJ"), that Petitioner is a terrorist member of MS-13 or is otherwise

properly detained without bond pursuant to 8 U.S.C. § 1226(c). For the reasons that follow,

the Court will grant the Petition and order Avelar's immediate release from custody.

Petitioner is currently detained at the Federal Correctional Institution –

Lewisburg. (*Id.*, ¶ 9). The Petition names as Respondents: Jessica Sage, Warden of FCI

Lewisburg; Michael T. Rose, Field Office Director of Enforcement and Removal Operations,

Philadelphia Field Office, Immigration and Customs Enforcement; Todd Lyons, Acting

Director, Immigration and Customs Enforcement; Kristi Noem, Secretary of the United

States Department of Homeland Security; and Pamela Bondi, United States Attorney

General. (*Id.*, ¶¶ 10-14). In the Petition, Petitioner alleges his civil immigration detention

without a bond hearing has become prolonged and in violation of Fifth Amendment's Due

Process Clause. (*Id.*, ¶¶ 49-59). He further argues that he should be detained, if at all,

pursuant to 8 U.S.C. § 1226(a), and seeks release from the custody of Warden Sage.

Petitioner alleges he was born in El Salvador in 1994 and entered the United States

in 2007 when he was minor. (*Id.*, ¶ 28). He further alleges he entered the United States

without inspection between ports of entry at the United States border with Mexico. (*Id.*).

After entry, Petitioner went to Edgewater, Maryland, "where he established a life with his

family." (*Id.*, ¶ 29).

In 2013, Petitioner applied for Deferred Action for Childhood Arrivals ("DACA"), which

he initially received. (*Id.*, ¶ 30) (citing Ex. 5 at 3). "In the interim years, Petitioner was

subject to several arrests, almost entirely traffic infractions that either resulted in probation and fines, or were nolle prosequi."[1] (*Id.*, ¶ 31) (citing Ex. 5 at 3-4).

On March 11, 2019, Petitioner was arrested on an administrative warrant by immigration officers. (*Id.*, ¶ 32) (citing Ex. 7 at 8). That same day, Petitioner was served with a Form I-862 Notice to Appear and Immigration and Customs Enforcement ("ICE") determined to release Petitioner on a $25,000 bond. (*Id.*).

On September 3, 2024, an IJ found Petitioner "inadmissible under the following Section(s) of the Immigration and Nationality Act ("INA"): 212(a)(6)(A)(i)" but dismissed the removal proceedings. (*Id.*, ¶ 33).

On May 23, 2025, a vehicle registered under Petitioner's name was stopped by police while being driven by Petitioner's brother. (*Id.*, ¶ 34). The officer instructed that the registered owner needed to appear in person to verify his identity, and they agreed that the meeting would take place at the Petitioner's residence. (*Id.*). When the Petitioner complied and presented himself at his home as requested, he was arrested and taken into custody. (*Id.*).

---

[1]     According to Petitioner "[w]hile in 2025, the I-213 form avers that Petitioner was arrested for incidents allegedly relating to controlled substances [in] 2011 and 2017, the I-213 form also concedes that there is no information regarding those arrests." (Doc. 1 n.1) (citing Ex. 5 at 3-4)). "Compare the same I-213 record created in 2019, where neither of these arrests appear." (*Id.*) (citing Ex. 7 at 13-14). "Moreover, a search of Maryland Judiciary records for 'Jairo Aguinada' does not reflect either of these alleged incidents . . . but only incidents relating to traffic citations and one minor vehicle offense." (*Id.*).

On July 3, 2025, an IJ held a hearing pursuant to *Matter of Joseph*, 22 I&N Dec. 799, 800 (BIA 1999), to first determine whether it had jurisdiction to hear Petitioner's bond hearing. (*Id.*, ¶ 35) (citing Ex. 1 at 4). At the *Joseph* hearing, ICE bears the burden of proof to show by a preponderance of the evidence that the noncitizen is properly subject to mandatory detention. (*Id.*). The IJ determined that ICE had failed to meet its burden, as it only provided its own I-213 record without anything more. (*Id.*). The IJ further found "the Form I-213 does not indicate the underlying basis for the information nor does the record contain any additional corroborating evidence." (*Id.*). The IJ further determined that it had jurisdiction to consider Petitioner's bond motion under 8 U.S.C. § 1226(a) and 8.C.F.R. §§ 1236.1(d)(1); 1003.19(a). (*Id.*). The IJ then went on to consider all evidence presented by both parties and agreed that Petitioner was not a danger to the community. (*Id.*, ¶ 36). Although the IJ acknowledged Petitioner's prior criminal history, he noted that Petitioner had no arrests or convictions since he was previously released by ICE and his removal proceedings were terminated through ICE's exercise of prosecutorial discretion. (*Id.*) (citing Ex. 1 at 5-6). The IJ was also persuaded by Petitioner's deep ties to his U.S family and community, including his U.S. citizen daughters, so that he was not a flight a risk. (*Id.*). Accordingly, the IJ ordered Petitioner released on the bond of $25,000. (*Id.*) (citing Ex. 1 at 6).

On July 8, 2025, ICE appealed the bond order to the Board of Immigration Appeals ("BIA"). (*Id.*, ¶ 37) (citing Ex. 3). However, while that appeal was pending, the BIA granted

ICE's request for an emergency stay. (*Id.*) (citing Ex. 4). In other words, "while the appeal was pending, instead of releasing the Petitioner, or instead of moving the BIA for a discretionary stay which would allow Petitioner at least some modicum of notice and opportunity to be heard, ICE invoked the 'automatic stay' regulation which allows them to unilaterally stay the IJ's order and prevent release on bond while the BIA appeal remains pending." (*Id.*, ¶ 38). Upon information and belief, Petitioner avers "that bond appeal remains pending." (*Id.*, ¶ 39). Petitioner's family then paid the bond, using their home as collateral. (*Id.*, ¶ 39) (citing Ex. 2 at 5). On July 9, 2025, the bail was claimed by ICE, but the petitioner was never released. (*Id.*) (citing Ex. 2 at 3).

As relief from removal, Petitioner applied for asylum on September 19, 2025. (*Id.*, ¶ 40). As a result, Petitioner received an Employer Authorization Document card with an expiration date on November 6, 2028. (*Id.*) (citing Ex. 9). On September 24, 2025, the IJ denied the Petitioner's application for asylum, withholding of removal, and relief under Article 3 of the Convention Against Torture, and ordered his removal to El Salvador. (*Id.*, ¶ 41). Petitioner was ordered removed for being present in the United States without being admitted or paroled and for lacking valid documentation. 8 U.S.C. §§ 1182(a)(6)(A)(i), (a)(7)(A)(i)(I). That order of removal, along with ICE's appeal of the IJ's bond decision, is currently on appeal. (*Id.*) (citing Ex. 8).

As of the date of filing the petition, Petitioner avers, upon information and belief, he "still has not received a decision from the BIA on ICE's appeal of the IJ order granting his

bond" and that appeal also remains pending. (*Id.*, ¶ 43). Petitioner remains detained by Respondents at FCI Lewisburg. (*Id.*)

Petitioner is held at FCI-Lewisburg, "which is a criminal correctional facility where immigration detainees like Petitioner are housed alongside criminal inmates." (*Id.*, ¶ 44). Upon information and belief, Petitioner asserts he "was told by the guards that he and other immigration detainees would have to 'adjust to our rules,' at the facility. (*Id.*). Petitioner alleges he was assigned an inmate number, strip searched, and had his DNA taken without his consent. (*Id.*). He further alleges that the temperatures at FCI Lewisburg "are inconsistent," and that the heat units are periodically inoperable, requiring him to wear his knit cap because of the cold. (*Id.*, ¶ 45).

Petitioner also alleges that his communications at FCI-Lewisburg "are severely limited," with "only four cell phones available for a cell block of 150 immigration detainees" and that he is limited to 510 minutes per month, including of legal calls, which must be prescheduled by the correctional facility. (*Id.*, ¶ 46). Petitioner claims that collective punishment is enforced at FCI-Lewisburg, and "if there is an argument, the inmate is taken to solitary confinement, and everyone else on the block is locked in their cells 1-2 days" noting that "[e]veryone gets punished." (*Id.*, ¶ 47). Petitioner alleges that he has "exhausted all administrative remedies." (*Id.*, ¶ 48).

The crux of Petitioner's allegations is that his prolonged detention violates his rights to substantive and procedural due process in violation of the Fifth Amendment's Due

Process Clause. (*Id.*, ¶¶ 49-59). The relief he requests include granting the writ of habeas corpus and ordering Respondents to "release Petitioner forthwith, having already secured the payment of the $25,000 bond as ordered by the Immigration Judge."[2] (*Id.*, ¶ 60(d)).

As directed by the Court, the Respondents filed their opposition to the Petition on March 16, 2026. (Doc. 6). The Respondents do not dispute the factual allegations contained in the Petition. Rather, the Respondents set forth legal arguments as to why Petitioner's detention is lawful under 8 U.S.C. § 1225(b). According to Respondents, "Avelar is properly detained under 8 U.S.C. § 1225(b) and is not eligible for release under 8 U.S.C. § 1226(a)." (Doc. 6 at 2). Respondents make no argument, as they did before the IJ, that Petitioner is a terrorist member of MS-13 or is otherwise properly detained under 8 U.S.C. § 1226(c). Accordingly, the Court will treat this Petition like it has prior immigration detention habeas petitions, because the Respondents maintain that Avelar's detention is pursuant to 8 U.S.C. § 1225(b) and that his detention without a bond hearing is lawful. *Patel v. O'Neil*, 2025 WL 3241212 (M.D. Pa. Dec. 8, 2025).

## II.    STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2241, a federal district court may grant a habeas petition where a petitioner's immigration detention is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). It is well established that a federal

---

[2]      Petitioner also seeks an order:  (1) enjoining Petitioner's transfer outside of this judicial district pending this litigation; (2) declare that Respondents' actions violate Petitioner's due process rights; (3) declare that Respondents may properly detain Petitioner, if at all, only pursuant to 8 U.S.C. § 1226(a); and (4) grant any other relief the Court deems just and proper. (Doc. 1, ¶¶ 60(a)-(c), (e2)).

habeas corpus petitioner generally has the burden of proving facts entitling him to a discharge from custody. *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972) (citations omitted); *accord Patel*, 2025 WL 3241212, at *2.

## III.    ANALYSIS

### A. This Court Has Jurisdiction Over Petitioner's Habeas Petition.

Before addressing the merits, the Court must first address Respondents' previous position that the Court lacks jurisdiction to grant the writ. Although Respondents do not seek dismissal of the Petition on jurisdictional grounds, Respondents have in prior habeas petitions directed the Court to three subparagraphs of the INA: 8 U.S.C. §§ 1252(g),1252(b)(9), and 1252(a)(2)(B)(ii) which they claim divest this Court of jurisdiction to hear habeas petitions. The Court need not dwell on the jurisdictional issues because it has previously rejected Respondents' jurisdictional arguments, and federal district courts to consider this issue have almost universally held that they have jurisdiction to consider habeas petitions like the one filed by Petitioner. In short, Section 1252(g) does not apply since Petitioner "does not attempt by this petition to address the commencement, adjudication, or execution of removal orders and their proceedings."[3] *Soumare v. Jamison*, 2025 WL 3461542, at *2 (E.D. Pa. Dec. 2, 2025) (citing *Reno v. Am.-Arab Anti-*

---

[3]    Section 1252(g) of the INA provides, in relevant part, that: "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

*Discrimination Comm.*, 525 U.S. 471, 482 (1999) (jurisdiction stripping under § 1252(g)(2) applies "only to [these] three discrete actions")); *see also Demirel v. Fed. Det. Ctr. Philadelphia*, 2025 WL 3218243, at *3 (E.D. Pa. Nov. 18, 2025) (Section 1252(g) does not bar jurisdiction because the petitioner "seeks a bond hearing; he does not challenge the commencement, adjudication, or execution of his removal (which may not even occur)").

Section 1252(b)(9) also does not divest this Court of jurisdiction over the habeas petition, because it "does not reach claims that are independent of, or wholly collateral to, the removal process."[4] *E.O.H.C. v. Sec'y United States Dept. of Homeland Sec.*, 950 F.3d 177, 186 (3d. Cir. 2020) (internal citation and quotation marks omitted).  Moreover, § 1252(b)(9) "does not strip jurisdiction when aliens seek relief that courts cannot meaningfully provide alongside review of a final order of removal." *Id.* ("If 'later' is not an option, review is available now."); *see also Demirel*, 2025 WL 3218243, at *3 ("Later is not an option here, because the Court of Appeals could not 'meaningfully' redress Demirel's purported unlawful denial of release on bond should his final removal be ordered.").  The same logic applies here:  later is not an option here because the Court of Appeals could not meaningfully address Petitioner's unlawful detention without a bond hearing.[5]

---

[4]    Section 1252(b)(9) of the INA provides, in relevant part, that "Judicial review of all questions of law and fact, including the interpretation and application of constitutional or statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9).  These claims must be filed "with an appropriate court of appeals." *Id.* § 1252(a)(2)(D).

[5]    The Third Circuit recent opinion in *Khalil v. President, United States*, 164 F.4th 259 (3d Cir. 2026), interpreting 8 U.S.C. § 1252(b)(9), does not strip this Court of jurisdiction. The Court agrees with other district

And section 1252(a)(2)(B)(ii) is inapposite because the Respondents' "statutory detention power is 'not a matter of discretion' to which § 1252(a)(2)(B)(ii) applies."[6] *Soumare*, 2025 WL 3461542, at *2 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)); *see also Demirel*, 2025 WL 3218243, at *3 ("Section 1252(a)(2)(B)(ii) thus also does not apply here."). In sum, 8 U.S.C. §§ 1252(g),1252(b)(9), and 1252(a)(2)(B)(ii) do not divest this Court of jurisdiction to hear Petitioner's habeas petition.

In addition, although Respondents no longer appear to be advancing an exhaustion of administrative remedies argument, the Court feels it prudent to nevertheless address exhaustion as it has been raised by the Respondents in numerous similar petitions. While habeas petitioners are "ordinarily required to exhaust their administrative remedies," *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996), they "need not exhaust administrative remedies where the issue presented involves only statutory construction." *Vasquez v. Strada*, 684 F.3d 431, 434-35 (3d Cir. 2012). Moreover, exhaustion of

---

courts that have addressed this issue and concludes that *Khalil* and 8 U.S.C. § 1252(b)(9) do not divest this court of jurisdiction to rule on Petitioner's habeas petition. *See Giyosov v. Jamison*, 2026 WL 209839, at *1 (E.D. Pa. Jan. 27, 2026) ("The Court concludes that *Khalil* is distinguishable because [petitioner's] petition does not present legal or factual questions that can be meaningfully reviewed alongside review of a final order of removal."); *Kourouma v. Jamison*, 2026 WL 120208, at *3 (E.D. Pa. Jan. 15, 2026) ("Unlike the challenge to detention in *Khalil*, Petitioner's challenge here is not 'inextricably linked' to his removal proceedings."). The same logic applies here: *Khalil* does not divest this Court of jurisdiction over Petitioner's habeas petition because his challenge is not "inextricably linked" to his removal proceedings and the Petition does not present factual and legal issues that can be meaningfully reviewed along with a final order of removal.

6    Section 1252(a)(2)(B)(ii) of the INA provides, in relevant part, that "no court shall have jurisdiction to review . . . any other decision or action by the Attorney General or Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii).

10

administrative remedies is also not required when doing so would be futile. *Demirel*, 2025 WL 3218243, at *4. Because the Board of Immigration Appeals in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) "predetermined the statutory issue" Petitioner "has no reasonable prospect of obtaining relief through administrative remedies." *Demirel*, 2025 WL 3218243, at *4 (internal citation and quotation marks omitted). Accordingly, the Petition will not be dismissed for failure to exhaust administrative remedies.

### B. <u>The Court Will Grant in Petitioner's Habeas Petition.</u>

Turning to the merits of the Petition, the Court will first consider the two statutory provisions of the INA at issue. 8 U.S.C. § 1225 is a statute entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." It provides, in relevant part:

> **(b) Inspection of applicants for admissions**
> > **(2) Inspection of other aliens**
> > > **(A) In General**
> > > Subject to subparagraph (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a [removal proceedings] of this title.

8 U.S.C. § 1225(b)(2)(A). 8 U.S.C. § 1226, in contrast, is entitled "Apprehension and detention of aliens." It provides, in relevant part:

> **(a) Arrest, detention, and release**
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

      (1) may continue to detain the arrested alien; and

      (2) may release the alien on—

          (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

          (B) conditional parole; but

      (3) may not provide the alien with work authorization (including an 'employment authorized' endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

8 U.S.C. § 1226(a). Respondents are currently detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A). (Doc. 6 at 2). It is undisputed that Petitioner does not have a final order of removal and his asylum application is currently pending before the BIA. It is further undisputed that an IJ granted Petitioner bond in the amount of $25,000 which Respondents still hold to this day.

As the Court previously found, "the overwhelming majority of federal district courts that have addressed this issue have interpreted the INA to find that persons similarly situated to Petitioner—noncitizens who previously entered the United States and are currently residing in the United States—are not subject to the mandatory detention provision of 8 U.S.C. § 1225(b)(2)(A) but instead are subject to the discretionary detention pursuant to 8 U.S.C. § 1226(a) and accordingly are entitled to a bond hearing." *Patel*, 2025 WL 3519895, at *4 (collecting cases). "These courts have further found that the statutory provisions of the INA that Respondents' claim divest this Court of jurisdiction do not apply to persons similarly situated to Petitioner and that there is no need to exhaust administrative remedies prior to filing a habeas petition." *Id.*

As before, "the Court finds that the near universal rejection of Respondents' interpretation of the INA by federal district courts to be highly persuasive and will adopt the same approach." *Id.* at *5. Petitioner's detention under 8 U.S.C. § 1225(b)(2)(A) is unlawful under the INA because the plain language of this provision and the statutory framework of the INA compels a finding that § 1225(b)(2)(A) applies only to noncitizens who are affirmatively seeking admission to the United States, not noncitizens like Petitioner who have resided in the United States for years.[7] *See Bethancourt Soto*, __ F. Supp. 3d __, 2025 WL 2976572, at * 7 ("For all these reasons, the Court concludes that § 1225(b)(2)(A) applies only to noncitizens who are actively, *i.e.*, affirmatively, 'seeking admission' to the United States. Accordingly, it does not apply to individuals like Petitioner, who has been residing in the United States 'for over seven years.'"); *see also Patel*, 2025 WL 3516865 at *5 (same).

Like other Courts to address this issue, the Court finds that Respondents' interpretation of the phrase "seeking admission" violates the rule against surplusage, would negate the plain meaning of the text, and make redundant Section 1226(c) mandatory

---

[7] The Supreme Court has also acknowledged that 8 U.S.C. § 1226 "generally governs the process of arresting and detaining ... **aliens already in the country pending the outcome of removal proceedings.**" *Jennings v. Rodriguez*, 583 U.S. 281, 288-89 (2018) (emphasis added); *Id.* at 303 ("As noted, § 1226 applies to aliens already present in the United States.").

In addition, despite the Board of Immigration Appeals holding in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), that 8 U.S.C. § 1225(b)(2)(A) applies to noncitizens like Petitioner, "[t]his Court owes no deference to an agency's interpretation that conflicts with the statute's unambiguous text." *Bethancourt Soto v. Soto*, __ F. Supp. 3d __, 2025 WL 2976572, at *7 (D.N.J. Oct. 22, 2025) (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400-01 (2024)).

detention of noncitizens who have committed or are charged with certain specified crimes. *See Centeno Ibbara*, 2025 WL 3294726, at *5-6 ("The government's interpretation of § 1225(b)(2) violates the rule against surplusage. If 'an applicant seeking admission' is the same as 'an applicant for admission,' then 'seeking admission' is surplusage. Congress has also recently adopted provisions in § 1226 that would be made superfluous under the government's interpretation. If a noncitizen enters the country illegally and is subsequently convicted or charged with certain crimes, these new provisions require that noncitizens be detained without a bond hearing. Under the government's interpretation, § 1225 would require such mandatory detention regardless of criminal charges or conviction. If this was the case, Congress would have no need to create additional requirements for mandatory detention."). Here, Petitioner is not affirmatively "seeking admission" into the United States. He did so in 2007 when he was a minor and was released into the United States and was initially granted status under DACA. Because Petitioner is not currently "seeking admission" into the United States, Section 1225(b)(2)(A) does not apply to him.[8]

As for Petitioner's constitutional arguments, it is undisputed that Petitioner is entitled to the protections of the Fifth Amendment's due process clause. *See Zadvydas*, 533 U.S. at 693 ("But once an alien enters the country, the legal circumstances change, for the Due

---

[8]    The Court acknowledges that Respondents cite to the Fifth Circuit's recent decision in *Buenrosto-Mendez v. Bondi*, __ F.4th__, 2026 WL 323330 (5th Cir. 2026), in which the Fifth Circuit—in a 2-1 decision—held that noncitizens like Petitioner were "applicants for admission" to the United States who were "seeking admission" and were thus subject to the INA's mandatory detention provision. The Fifth Circuit's ruling is not binding on this Court. Moreover, the Court finds as persuasive Judge Douglas's dissent.

14

Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."). Under the Respondents' approach, Petitioner and those noncitizens residing in the United States who have not committed, or been charged with, a felony or a specified crime under the INA could be lawfully detained without a bond hearing consistent with constitutional requirements from May 2025 until some future date when the BIA will hear his appeal (despite an IJ granting Petitioner's release on $25,000 bond which Respondents still hold). And likely for a period much longer, despite Respondents' claims that the detention is only "temporary." This prolonged and indefinite detention would continue if Petitioner exercised his right to appeal the forthcoming BIA decision on his asylum application to the United States Court of Appeals.

Further, Respondents' approach would be inconsistent with the Supreme Court's decision in *Zadvydas* (which considered the indefinite detention of the petitioner *after a final removal order* and finding fewer than six months detention is presumed to be constitutional) and would violate both the INA and Petitioner's due process rights by depriving him of his liberty without due process of law. Importantly, Respondents do not dispute that there is no final removal order for Petitioner. And Respondents no longer contend that Petitioner is a terrorist or member of MS-13. Accordingly, the Court will grant Petitioner's habeas petition because his detention under § 1225(b) is unlawful.

## IV.    CONCLUSION

For the foregoing reasons, Petitioner's habeas petition will be granted because his mandatory detention under 8 U.S.C. § 1225(b)(2)(A) without a bond hearing is unlawful and violates both the INA and the Fifth Amendment's due process clause. Petitioner was released by an IJ on $25,000 bond which Respondents did not revoke and still hold to this day. Because the Respondents maintain that a bond hearing is not required and the Respondents' interpretation is inconsistent with the INA, Respondents will be directed to immediately release Petitioner from the custody of Respondent Jessica Sage, Warden of FCI Lewisburg, and file a declaration or affidavit pursuant to 28 U.S.C. § 1746 confirming that Petitioner Avelar has been released from custody. *See Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (acknowledging that a habeas court has "the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted."); *see also Bethancourt Soto*, 2025 WL 2976572, at *9 (ordering immediate release); *Flores Obando*, 2025 WL 3452047, at *3 (same); *Kashranov*, 2025 WL 3188399, at *8 (same); *Patel*, 2025 WL 3516865, at *6 (same).

Respondents will further be permanently enjoined from detaining Petitioner under 8 U.S.C. § 1225(b). *See Bethancourt Soto*, 2025 WL 2976572, at *9 (permanently enjoining respondents from detaining petitioner under § 1225 where petitioner did not file a motion for temporary restraining order or motion for preliminary injunction); *see also Maldonado*, 2025

16

WL 2985256, at *7 ("The Court grants the writ of habeas corpus and orders Respondents to release Petitioner within 24 hours. . . . Following Petitioner's release, Respondents are permanently enjoined from rearresting or otherwise detaining Petitioner under § 1225(b)(2)."); *Patel*, 2025 WL 3516865, at *7.  If Respondents elect to later detain Petitioner under 8 U.S.C. § 1226(a), the Respondents must provide Petitioner Avelar with notice and an opportunity to be heard at a timely individualized bond hearing, where an Immigration Judge will assess whether he is a danger or flight risk.  A separate Order follows.

Robert D. Mariani
United States District Judge